IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO.:

| | |
|---|---|
| NATIONWIDE MUTUAL FIRE <br> INSURANCE COMPANY <br><br> Plaintiff, <br><br> v. <br><br> SMOKY MOUNTAIN COUNTRY CLUB <br> PROPERTY OWNERS ASSOCIATION, <br> INC., and SMCC CLUBHOUSE, LLC, a <br> North Carolina Limited Liability Company, <br><br> Defendants. | **COMPLAINT FOR** <br> **DECLARATORY JUDGMENT** |

Plaintiff Nationwide Mutual Fire Insurance Company ("Nationwide"), pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §2201 *et seq.*, submits the following Complaint for Declaratory Judgment, and alleges as follows:

**JURISDICTION**

1. Nationwide is a corporation organized under the laws of the State of Ohio with its principal place of business in Columbus, Ohio, and, with due authorization, is engaged in the business of issuing insurance policies in the State of North Carolina where it operates out of an office located in Raleigh, North Carolina.

2. Defendant Smoky Mountain Country Club Property Owners Association, Inc. ("The Association") is a North Carolina nonprofit corporation formed pursuant to, and in accordance with, the terms and provisions of, the Declaration, and in compliance with the North Carolina Nonprofit Corporation Act, Chapter 55, North Carolina General Statutes, and the

Planned Community Act, Chapter 55, North Carolina General Statutes, and the Planned Community Act, and its principal office is located in Swain County, North Carolina.

3. Defendant SMCC Clubhouse, LLC ("SMCC"), is a North Carolina limited liability company with its principal office at 1112 Conleys Creek Road in Whittier, Swain County, North Carolina.

4. This Court has jurisdiction over the parties and subject matter jurisdiction pursuant to 28 U.S.C. § 1332, based upon diversity of citizenship of the parties and the fact that the matter in controversy is in excess of seventy-five thousand dollars ($75,000.00).

5. Venue is proper in this Court pursuant to 28 U.S.C. 1391(b)(2) because the insurance policy at the heart of this matter was issued in Raleigh, North Carolina and because Nationwide's North Carolina operations are based in Raleigh, North Carolina.

## UNDERLYING ACTION

6. The Smoky Mountain Country Club is a residential planned community located in Swain County, North Carolina. The underlying action arises out of dispute between the developer of the planned community ("the Developer") and the Association.

7. The underlying action was commenced on October 13, 2014 in Swain County Superior Court captioned *Conleys Creek Limited Partnership, a North Carolina limited partnership, and Marshall Cornblum, Plaintiffs, v. Smoky Mountain Country Club Property Owners' Association, Inc., a North Carolina nonprofit corporation, William Spute, Ronal Shulm, and Claudette Krizek, Defendants*, with file number 14-CVS-238 ("Underlying Action").

8. On March 24, 2015, the Association filed an amended Answer which included claims against SMCC, who had been added as a counterclaim defendant.

2

9. On April 30, 2015, SMCC filed counterclaims against the Association. A true and accurate copy of the pleading in which SMCC asserted these counterclaims is attached hereto as Exhibit A. In its counterclaims, SMCC alleges, *inter alia*, the following:

   a. Smoky Mountain Country Club is governed by the Amended and Restated Declaration of Covenants, Conditions and Restrictions, and Reservation of Easements for Smoky Mountain Country Club ("The Declaration") (¶ 1);

   b. The Declaration is a contract among (1) Declarant Conleys Creek Limited Partnership ("CCLP"), its successors and assigns, (2) Owners of Lots, Townhouse Units and Condominiums Units in Smoky Mountain Country Club, and their grantees, successors, etc. ("Owners") and (3) the Association (¶ 3);

   c. The Declaration, Article II, Section 4, provides that Declarant shall grant to the Association and the Owners a perpetual nonexclusive right to use the Clubhouse Use Facilities, and, in consideration thereof, (1) the Association shall assess, bill and collect Clubhouse Dues from each Owner, and shall pay all of the Clubhouse Dues collected from Owners to the Declarant, and (2) each Owner (excluding Declarant) shall pay the Clubhouse Dues to the Association, and the obligation of each Owner to pay the Clubhouse Dues to the Association shall be absolute and shall not be dependent on the Owner's actual use of the Clubhouse Use Facilities (the "Clubhouse Dues Agreement") (¶ 20);

   d. SMCC is a successor to CCLP, became the owner of the Clubhouse Property on which the Clubhouse Use Facilities are situated, and is entitled to the Clubhouse Dues (¶ 27);

   e. The Association breached its obligations under the Clubhouse dues Agreement in the Declaration on September 27, 2014, when the president of the Association sent out a notice to Owners stating that "effective immediately the POA [the Association] will no longer bill for or collect the monthly fee for Clubhouse Dues." (¶29);

   f. On October, 2, 2014, the president of the Association sent a notice to Owners stating the following: "These payments will no longer include Clubhouse dues as our POA [the Association] has never had anything to do with 'clubhouse' facilities' and should never have been required to collect dues on behalf of Conleys Creek Limited Partnership (or their related entity). Should you wish to continue to utilize the 'clubhouse facilities' (tennis courts, swimming pool, Jacuzzi, locker rooms or work out facilities) you should contact Conley's Creek, and make arrangements to forward any feels directly to them. POA

3

members are not required to belong to the 'clubhouse facilities' and may opt out if they so desire." (¶ 30);

    g. On October 22, 2014, SMCC sent a notice to Owners stating that they have the mandatory obligation to pay Clubhouse Dues, and that in an effort to mitigate the damages caused by the Association's breach of its obligations to assess, bill and collect Clubhouse Dues from Owners, SMCC will bill Owners separately for Clubhouse Dues. (¶ 32); and

    h. Fewer than one-third of Owners are currently paying Clubhouse Dues. If not for the breach by the Association, SMCC's annual net profit is in excess of $120,000. After the breach, there is no annual profit. The present value of the loss of profits over the remaining 35 years of term of the Declaration is in excess of $4,000,000. (¶ 36)

10. SMCC has alleged that the September 27, 2014 Notice was "an intentional material breach of the obligations of the Association under the Clubhouse Dues Agreement in the Declaration requiring the Association to assess, bill and collect the Clubhouse Dues from the Owners and to pay the Clubhouse Dues collected to SMCC Clubhouse, LLC." (¶ 29)

11. SMCC has alleged that the Association breach the implied covenant of good faith and fair dealing with the October 22, 2014 Notice. (¶ 30)

12. SMCC asserted the following counterclaims against the Association-- (a) Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing, (b) Civil Conspiracy, (c) Libel per se, and (d) Unfair and Deceptive Acts or Practices.

13. On January 26, 2016, the trial court dismissed SMCC's counterclaims against the Association on the Association's motion for summary judgment.

14. On September 5, 2017, the North Carolina Court of Appeals held that the trial court improperly granted summary judgment to the Association on the breach of contract and breach of covenant of good faith and fair dealing claim as the evidence created a genuine issue of material act. A true and accurate copy of the North Carolina Court of Appeals decision is attached hereto as Exhibit B.

4

# THE POLICY

15. The Association is listed as the named insured on Premier Businessowners Policy number ACP BPHF 2244490761 ("the Policy") with an effective policy period from June 22, 2014 to June 22, 2015. A certified copy of the Policy is attached hereto as Exhibit C.

16. The Policy includes a Directors and Officers Liability Endorsement. The insuring agreement for this endorsements provides Nationwide "will pay those sums up to the applicable Limit of Insurance that the "insured", as defined in this endorsement, becomes legally obligated to pay as damages for any "claims" made arising out of a "wrongful act" committed during the Coverage Period shown in the Schedule of this endorsements and to which this insurance applies . . . ." The insuring agreement further provides that Nationwide "will have the right and duty to defend any 'insured' against a 'suit' seeking those damages for a 'claim' for which there is coverage under DIRECTORS AND OFFICERS LIABILITY."

17. The Policy defines "wrongful act" as follows--"any actual or alleged negligent act, negligent error, negligent commission, negligent mistake, negligent misstatement, negligent misstatement, negligent misleading statement or negligent breach of duty committed by or at the direction of a 'director' or 'officer' while acting within the scope of their duties, individually or collectively."

18. The Policy's Directors and Officers Liability Coverage does not apply to "claims" for anything other than money damages. (Exclusion e.)

19. The Policy's Directors and Officers Liability Coverage does not apply to claims for transactions of any insured gaining personal profit or advantage not shared equitably by your owners. (Exclusion h.)

20. The words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person qualifying as a Named Insured under the Policy.

5

Case 5:19-cv-00180-FL   Document 1   Filed 05/03/19   Page 5 of 7

21. The Policy provides no liability coverage to the Association for existing claims asserted against the Association in the Underlying Action.

22. SMCC has failed to allege that it has sustained damages for claims arising out a "wrongful act" as that term is defined in the Policy.

23. Existing claims against the Association in the Underlying Action do not arise out of a "wrongful act" as that term is defined in the Policy.

23. The Policy's exclusions may apply to bar coverage for any existing claims asserted against the Association in the Underlying Action.

24. Nationwide has no duty to defend or indemnify the Association for existing claims asserted against the Association in the Underlying Action.

25. A genuine, actual and justiciable controversy between the parties to this action has arisen and presently exists concerning whether there is coverage under the Policy and Nationwide is entitled to a declaratory judgment as to its obligations and liabilities under the Policy.

26. Nationwide is entitled to a declaration that it has no duty to defend or indemnify the Association for existing claims asserted against the Association in the Underlying Action.

**PRAYER FOR RELIEF**

WHEREFORE, Nationwide respectfully prays the Court that:

1. The Court enter a judgment declaring that Nationwide has no duty or obligation under the Policy to make any payment for any sums for any settlement, verdict, or Judgment that may be entered in the Underlying Action, and that Nationwide has no duty or obligation to provide a defense for any of the claims alleged in the Underlying Action;

2. The costs of this action be taxed against Defendants; and

3. Nationwide have such other and further relief as the Court shall deem just and proper.

This the 3rd day of May, 2019.

      BAILEY & DIXON, LLP

      By: /S/ Philip A. Collins
          Philip A. Collins, NC State Bar #29153
          Attorneys for Plaintiff Nationwide Mutual Fire
Insurance Company
Post Office Box 1351
Raleigh, North Carolina 27602-1351
Telephone: (919) 828-0731
Facsimile: (919) 828-6592
pcollins@bdixon.com